



# PHYSICIAN INDEPENDENT CONTRACTOR AGREEMENT

THIS INDEPENDENT CONTRACTOR AGREEMENT ("Agreement") is made and entered into by and between Unum Group, Chattanooga, Tennessee and its affiliates ("the Company") and D. Malcolm Spica, PhD ("Contractor") to be effective January 1, 2011.

WHEREAS, the Company wishes to engage the Contractor as an independent contractor to assist the Company with medical claims consulting.

WHEREAS, Contractor agrees to perform these services for the Company under the terms and conditions set forth in the Agreement.

NOW, THEREFORE, in consideration of the mutual promises set forth herein and other good and valuable consideration, the sufficiency and adequacy of which is hereby acknowledged, it is agreed by and between the Company and Contractor.

1. **Engagement.** The work to be performed by Contractor includes all services generally performed by Contractor in Contractor's usual line of business, including but not limited to medical claims consulting. The work to be performed also includes attendance and testimony at trials and/or depositions and travel associated with trials and depositions.

2. **Term and Termination.** This Agreement shall commence on January 1, 2011. Either party may cancel this Agreement on thirty (30) days written notice; otherwise the Agreement remains in effect for one year. Contractor shall be entitled to receive the compensation accrued but unpaid as of the effective date of the termination of this Agreement. Upon termination of this agreement, any company assets in use by the consultant are to be returned to the Company within 5 business days. As applicable, any printed claim specific materials must be returned to the Company within 5 business days for proper storage and destruction.

3. **Termination for Cause.** Either party may terminate this Agreement at any time in the event of a material breach of any provision of this Agreement by the other party. The party terminating this Agreement shall give written notice to the other party which shall describe, in reasonable detail the facts surrounding such breach.

4. **Compensation.** The Company agrees to pay to Contractor $███ dollars per hour for all authorized services Contractor provides under the terms of this Agreement. To receive payment, Contractor must submit to the Company an itemized statement at the end of each week showing the hours worked pursuant to this Agreement during the previous week. The Company will pay all undisputed bills within fifteen (15) days of receipt.

5. **Indemnification.** The Company agrees to indemnify and hold harmless Contractor for any and all liability or loss arising out of services performed on behalf of the Company within the scope and course of this Agreement, excluding liability or loss for intentional misconduct, criminal or fraudulent acts or acts of dishonesty, which by definition are outside the scope and course of this Agreement and excluding acts that

are covered by Contractor's malpractice insurance, if Company suffers a loss due to the afore mentioned Contractor will indemnify Company.

Neither party shall be deemed to be the legal representative of the other. Contractor nor any personnel employed by or affiliated with Contractor for the benefit of contractor shall be considered as having employee status at the Company. The contractor agrees to assume complete responsibility for his own federal and state taxes, worker's compensation insurance, social security, and unemployment insurance. Neither party shall have the right to obligate or bind the other in any manner whatsoever and nothing contained herein shall give, or it intended to give, any rights of any kind to any third person.

6. **Relationship of Parties**. The parties intend that an independent Contractor relationship will be created by this Agreement. The Company is interested only in the results to be achieved and the conduct and control of the work will lie solely with Contractor. Contractor is not to be considered and shall not hold himself out as an agent or employee of the Company for any purpose and Contractor is not entitled to any employment benefits that the Company provides for its employees. It is understood that the Company does not agree to use Contractor exclusively.

7. **Confidential Information/Non-Disclosure**. Contractor agrees that any and all information that he or she may obtain or discern, either directly or indirectly while performing services under this Agreement is the proprietary and confidential information of the Company and such information shall not be disclosed to any person or entity without the prior written consent of the Company. For purposes of this Agreement, information includes, but is not limited to, all information contained in claim files. Contractor agrees that his or her duty of nondisclosure will survive this Agreement. At no time shall consultant email information containing personally identifiable information from the Company asset to a personal computer or pda device and vice versa. Contractor agrees as applicable he or she is in compliance with Schedule A – Privacy and Information Security Requirements.

8. **Ownership of Property**. All right, title, copyright trademark, and interest of any kind or nature whether known or unknown in any work product or services arising out of Contractor's performance pursuant to this Agreement shall be and remain the sole and exclusive property of the Company for all purposes and uses. The Contractor shall have no right, title or interest of any kind or nature in or to such property or in or to any result of proceeds from such property.

9. **Non-Discrimination Statement**. Contractor will not knowingly do business with any company that discriminates against an employee or applicant for employment on the basis of race, sex, religion, color, national origin, handicap, disability, sexual orientation or status as a disabled veteran or veteran of the Vietnam era.

10. **Non-Solicitation of Unum Employees**. For a period of one (1) year following the termination of this contract, Contractor will not directly or indirectly solicit any person who is then an employee of the Company to become employed by or otherwise render services to any other person or entity.

UNUM-RPD-00044

11. **Compliance.** Contractor agrees to comply with the following Company policies: (1) Appropriate Use and Privacy of Unum Assets Policy; (2) Policy on Workstation and Laptop Security; and (3) Policy – Internet Use and Security located on Inside Unum under HR policies and procedures.

12. **Entire/Amendment.** This represents the entire Agreement between the Parties and supersedes all other oral or written contracts between the Parties. This Agreement may not be altered or amended unless done in writing and signed by both Parties.

13. **Governing Law.** This Agreement shall be governed by the laws of the State of Tennessee.

14. **Assignment.** This Agreement may not be assigned by any party without the prior written consent of all Parties.

15. **Conflict of Interest.** Contractor agrees not to perform an independent medical exam or similar service for any person insured by the Company. If Contractor has patients that are claiming disability and are insured by the Company, Contractor will make every effort to have a colleague or another doctor act as the attending physician. The Contractor should not render any opinion as to the bona fides of any claim.

16. **Background checks.** By signing this agreement the consultant understands and has provided consent for the Company to complete a background check. The Company reserves the right to update background checks at reasonable intervals of no less than annually. Consultant shall inform the Company immediately of any complaints to the state medical licensing board have occurred and or any lawsuits related to alleged professional negligence.

Unum Group

_____
Signature

Vaughn Frigon, MD  1/6/11
Printed Name

Contractor (D. Malcolm Spica, PhD)

_____
Signature

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Street Address

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
City, State, Zip

## Schedule A   Privacy and Information Security Requirements

1. <u>Standard of Performance; Privacy and Security</u>.

    - The requirements of this Schedule A shall apply in addition to the requirements of paragraph 7 of the Agreement and any other schedule or portion of this Agreement. To the extent of any conflict between the requirements of this Schedule A and the requirements of any other schedule or portion of this Agreement, this Schedule A shall govern.
    - Consultant shall obtain all necessary permits and comply with all state and federal laws and regulations applicable to the performance of the Services including, without limitation, those laws and regulations governing the privacy and security of personally identifiable information including, without limitation, a person's name, address, phone number, fax number, e-mail address, date of birth, social security number or other government-issued identifier, credit card information and IP addresses ("Personal Information"). Personal Information can be in any media or format, including computerized or electronic records as well as paper-based files provided by Unum to Consultant, accessed by Consultant through Unum's information systems, and/or collected by Consultant on Unum's behalf from consumers ("Individuals").
    - Additionally, Consultant further agrees that it will only collect, use, disclose and retain Personal Information in the U.S., and will not transfer such Personal Information to any other country for any purpose, including but not limited to outsourcing, without the prior written authorization of Unum.
    - Consultant represents and warrants that it has implemented and shall maintain a comprehensive privacy and information security program that is appropriate to the size, scale and scope of its operations, the Services it will provide to Unum, and the sensitive nature of any Personal Information it may receive from or on behalf of Unum during its provision of the Services. Consultant agrees to limit access, use and disclosure of the Unum Information, including Personal Information, to those of Consultant's affiliates and employees who have a need to know such information for the purpose of performing the Services and have acknowledged, in writing, their individual agreement to privacy and information security restrictions set forth in this Agreement and any attachments. Consultant further warrants that it will take any and all other steps necessary to safeguard the Unum Information, including Personal Information, against unauthorized acquisition, access, use and disclosure to at least the extent it maintains the confidentiality of its most proprietary and confidential information.
    - Consultant further agrees:
        (i) That Unum is the owner of all Personal Information and has the right to direct Consultant in connection with the collection, use, disclosure and retention of such Personal Information;

(ii) That it will collect, use, disclose or maintain Personal Information solely for the purpose of performing the Services or as otherwise permitted pursuant to this Agreement;

(iii) To establish commercially reasonable controls to ensure the confidentiality of Personal Information and to ensure that Personal Information is not disclosed contrary to the provisions of this Agreement; provided, further, without limiting the foregoing, Consultant shall maintain and implement an information security program that includes appropriate administrative, technical and physical safeguards and other security measures that are designed to: (a) ensure the security and confidentiality of Personal Information; (b) protect against any anticipated threats or hazards to the security, confidentiality and integrity of Personal Information; and (c) protect against unauthorized acquisition, access, disclosure or use of Personal Information;

(iv) Approved, industry standard encryption technologies must be used in connection with any transfer, communication or remote access connectivity involving Personal Information, as permitted or authorized herein. The use of proprietary encryption algorithms is not allowed for any purpose;

(v) Encryption of all Personal Information stored on laptops or other portable devises in accordance with any applicable state or federal regulations or guidance, including but not limited to the Massachusetts Standards for the Protection of Personal Information of Residents of the Commonwealth, 201 CMR 17.00.

(vi) That it will not disclose Personal Information to third parties, unless: (a) Consultant has received prior written authorization from Unum; or (b) such disclosure is required by law, in which case Consultant shall immediately notify Unum in writing of any subpoena or other court or administrative order or proceeding or other request seeking access to or disclosure of Personal Information; provided, further, Consultant shall use its best efforts to limit the nature and scope of the required disclosure and will only disclose the minimum amount of Personal Information necessary to comply with law;

(vii) That it will provide Unum or Unum representatives the right to audit Consultant's business processes and practices that involve the collection, use, disclosure or retention of Personal Information in relation to the Services rendered under this Agreement; and

(viii) Consultant agrees to comply with any applicable state or federal information security breach notification laws If Consultant becomes aware of any actual or suspected unauthorized acquisition, access use, or disclosure of Personal Information in its possession, it shall promptly

UNUM-RPD-00047

notify Unum of such actual or suspected acquisition, access use, or disclosure of Personal Information, but in no event later than five (5) business days of its first gaining such knowledge. Consultant shall identify to Unum what Personal Information may have been acquired, accessed used or disclosed. To the extent practicable, Consultant shall have a duty to and shall take reasonable steps to minimize or mitigate the risk of harmful or potentially harmful effects resulting from said actual or suspected unauthorized acquisition, access, use or disclosure. Consultant shall further have a duty to cooperate with Unum in the investigation of said actual or suspected unauthorized acquisition, access, use, or disclosure of Personal Information. Where the actual or suspected unauthorized acquisition, access, use or disclosure resulted from any error, omission or other action by Consultant, Consultant shall promptly take all necessary and appropriate corrective actions including, without limitation, at the request of Unum and at Consultant's expense, provide notices to Individuals whose Personal Information may have been affected, whether or not such notice is required by law. Unum shall have the right to review and approve the content of any such notification prior to the notification being made. Consultant agrees to comply with any applicable state or federal requirements governing the content of such notification. Upon Unum's request, Consultant shall also provide, at its own cost, credit monitoring or other appropriate remediation, whether or not such remedial measures are required by law;

2. Return or Destruction of Records.

    (A) Upon termination of this Schedule or the underlying Agreement, for any reason, Consultant shall return or destroy, at Unum's option, all Confidential and/or Personal Information.

    (B) If Unum requires Consultant to destroy the Confidential and/or Personal Information, Consultant shall destroy the Information in a manner and method consistent with then-existing legal and industry standards for the safe destruction of records containing sensitive information and shall certify the same to Unum.

    (C) In the event Consultant determines that returning or destroying the Confidential and/or Personal Information is not feasible, Consultant shall notify Unum in writing of the conditions that make return or destruction unfeasible. Upon Unum's agreement that such return or destruction is not feasible, Consultant may maintain the Information, subject to the continued protections and requirements of this Schedule and the underlying Agreement, and Consultant shall limit further use and disclosure of the Confidential and/or Personal Information to those purposes that make the return or destruction not feasible.

3. Miscellaneous.

    (A) Survival. Consultant's obligations with respect to Personal Information of Unum as set forth in this Schedule shall survive the expiration or termination of this Schedule or the underlying Agreement indefinitely or, as otherwise directed by Unum according to Section 1, until the information is destroyed by Consultant pursuant to this Schedule.

UNUM-RPD-00048

(B) <u>Injunctive Relief</u>. Consultant agrees that any use or disclosure of Personal Information in violation of this Schedule or the underlying Agreement or any applicable privacy laws or regulations may cause immediate and irreparable harm to Unum for which money damages may not constitute an adequate remedy. Therefore, Consultant agrees that Unum may seek to obtain injunctive and other equitable relief in addition to its remedies at law.

# PHYSICIAN INDEPENDENT CONTRACTOR AGREEMENT
## ONSITE & OFFSITE CONSULTANTS WITH UNUM SYSTEMS ACCESS

**THIS INDEPENDENT CONTRACTOR AGREEMENT** ("Agreement") is made and entered into by and between **Unum Group**, Chattanooga, Tennessee and its affiliates ("the Company") and Steven N. Van De Mark, PhD ("Contractor") to be effective January 1, 2010.

**WHEREAS**, the Company wishes to engage the Contractor as an independent contractor to assist the Company with medical claims consulting.

**WHEREAS**, Contractor agrees to perform these services for the Company under the terms and conditions set forth in the Agreement.

**NOW, THEREFORE**, in consideration of the mutual promises set forth herein and other good and valuable consideration, the sufficiency and adequacy of which is hereby acknowledged, it is agreed by and between the Company and Contractor.

1. **Engagement.** The work to be performed by Contractor includes all services generally performed by Contractor in Contractor's usual line of business, including but not limited to medical claims consulting. The work to be performed also includes attendance and testimony at trials and/or depositions and travel associated with trials and depositions.

2. **Term and Termination.** This Agreement shall commence on January 1, 2010. Either party may cancel this Agreement on thirty (30) days written notice; otherwise the Agreement shall remain in force indefinitely. Contractor shall be entitled to receive the compensation accrued but unpaid as of the effective date of the termination of this Agreement. Upon termination of this agreement, any company assets in use by the consultant are to be returned to Unum within 5 business days. As applicable, any printed claim specific materials must be returned to Unum within 5 business days for proper storage and destruction.

3. **Termination for Cause.** Either party may terminate this Agreement at any time in the event of a material breach of any provision of this Agreement by the other party. The party terminating this Agreement shall give written notice to the other party which shall describe, in reasonable detail the facts surrounding such breach.

4. **Compensation.** The Company agrees to pay to Contractor ▅▅▅ dollars per hour for all authorized services Contractor provides under the terms of this Agreement. To receive payment, Contractor must submit to the Company an itemized statement at the end of each week showing the hours worked pursuant to this Agreement during the previous month. The Company will pay all undisputed bills within fifteen (15) days of receipt.

5. **Hours of Work.** Contractor shall provide the services set forth above for the company for such number of hours as the parties mutually agree.

1

6. **Indemnification.** The Company agrees to indemnify and hold harmless Contractor for any and all liability or loss arising out of services performed on behalf of Unum within the scope and course of this Agreement, excluding liability or loss for intentional misconduct, criminal or fraudulent acts or acts of dishonesty, which by definition are outside the scope and course of this Agreement and excluding acts that are covered by Contractor's malpractice insurance, if Company suffers a loss due to the afore mentioned Contractor will indemnify Company.

Neither party shall be deemed to be the legal representative of the other. Contractor nor any personnel employed by or affiliated with Contractor for the benefit of contractor shall be considered as having employee status at the Company. The contractor agrees to assume complete responsibility for his own federal and state taxes, worker's compensation insurance, social security, and unemployment insurance. Neither party shall have the right to obligate or bind the other in any manner whatsoever and nothing contained herein shall give, or it intended to give, any rights of any kind to any third person.

7. **Relationship of Parties.** The parties intend that an independent Contractor relationship will be created by this Agreement. The Company is interested only in the results to be achieved and the conduct and control of the work will lie solely with Contractor. Contractor is not to be considered and shall not hold himself out as an agent or employee of the Company for any purpose and Contractor is not entitled to any employment benefits that the Company provides for its employees. It is understood that the Company does not agree to use Contractor exclusively.

8. **Confidential Information/Non-Disclosure.** Contractor agrees that any and all information that he or she may obtain or discern, either directly or indirectly while performing services under this Agreement is the proprietary and confidential information of the Company and such information shall not be disclosed to any person or entity without the prior written consent of the Company. For purposes of this Agreement, information includes, but is not limited to, all information contained in claim files. Contractor agrees that his or her duty of nondisclosure will survive this Agreement. At no time shall consultant email information containing personally identifiable information from a Unum asset to a personal computer or pda device and vice versa. Contractor agrees as applicable he or she is in compliance with Schedule A – Privacy and Information Security Requirements.

9. **Ownership of Property.** All right, title, copyright trademark, and interest of any kind or nature whether known or unknown in any work product or services arising out of Contractor's performance pursuant to this Agreement shall be and remain the sole and exclusive property of the Company for all purposes and uses. The Contractor shall have no right, title or interest of any kind or nature in or to such property or in or to any result of proceeds from such property.

10. **Non-Discrimination Statement.** Contractor will not knowingly do business with any company that discriminates against an employee or applicant for employment on the basis of race, sex, religion, color, national origin, handicap, disability, sexual orientation or status as a disabled veteran or veteran of the Vietnam era.

11. **Non-Solicitation of Unum Employees.** For a period of one (1) year following the termination of this contract, Contractor will not directly or indirectly solicit any person who is then an employee of the Company to become employed by or otherwise render services to any other person or entity.

12. **Entire/Amendment.** This represents the entire Agreement between the Parties and supersedes all other oral or written contracts between the Parties. This Agreement may not be altered or amended unless done in writing and signed by both Parties.

13. **Governing Law.** This Agreement shall be governed by the laws of the State of Tennessee.

14. **Assignment.** This Agreement may not be assigned by any party without the prior written consent of all Parties.

15. **Conflict of Interest.** Contractor agrees not to perform an independent medical exam or similar service for any person insured by the Company. If Contractor has patients that are claiming disability and are insured by the Company, Contractor will make every effort to have a colleague or another doctor act as the attending physician. The Contractor should not render any opinion as to the bona fides of any claim.

16. **Asset, use, security and Internet usage.** Contractor will adhere to Unum's policies relating to Use of Unum's assets, Desktop and Laptop Security and Internet usage as outlined in Schedule B.

17. **Background checks.** By signing this agreement the consultant understands and has provided consent for Unum to complete a background check. Unum reserves the right to update background checks at reasonable intervals of no less than annually. Consultant shall inform Unum immediately of any complaints to the state medical licensing board have occurred and or any lawsuits related to alleged professional negligence.

18. **Professional Regulations.** Nothing in this agreement is intended to contravene the legal regulations and ethical principles in the state in which the contractor practices.

**Unum Group**

_____
Signature

_____
Printed Name

**Contractor (Steven N. Van De Mark, PhD)**

_____
Signature

_____
Street Address

_____
City, State, Zip

3

# Unum Clinical, Vocational, and Medical Services Statement Regarding Professional Conduct

*Clinical, vocational, and medical professionals within the Benefits Center will:*

- Comply with all applicable laws, ethical codes, and standards of professional conduct
- Communicate with partners and internal customers promptly and professionally
- Discuss medical and/or vocational facts in an open and honest manner
- Provide fair and reasonable evaluations considering all available medical and/or vocational evidence, both objective and subjective, both supporting impairment and supporting capacity
- Consider all diagnoses and impairments, and their effect on the whole person, when evaluating medical and/or vocational data in a claim file
- Work with or refer files to other appropriate medical personnel when specialization prevents one professional from considering all impairments and diagnoses in an evaluation of the whole person.
- Complete "Fair Claims Settlement Practice" training annually.
- Represent medical and/or vocational facts accurately.
- Provide reasonable, clear, and accurate explanations of professional opinions so that clear and full explanations of decisions based on these opinions are available to the claimant
- Avoid redundant or unnecessary requests for information, e.g. duplicate information, data not reasonably required for adequate analysis, or data not material to the analysis of the claim.
- Report any significant barriers to achieving the Benefits Center Philosophy and its application to your management, directly to the Company's Chief Ethics Officer or through the Business Practices & Ethics Hotline as outlined in Unum's Code of Business Practices and Ethics

I have read and understand the principles and guidelines above. I agree to abide by these principles in my work on behalf of Unum, and to consult with peers, managers, and ultimately the Chief Ethics Officer if I am unclear regarding my responsibilities under these principles or encounter barriers to abiding by them. In addition, prior to making each determination as to a claimant's impairment, for which I have been trained, I will certify that I have reviewed all medical, clinical, vocational and other evidence provided to me bearing upon impairment

_____      01/01/10
Employee Signature                                            Date